# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | |
|---|---|
| DIALECT, LLC,<br><br>                     Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>                     Defendant. | Case No. 7:25-cv-00060-DC-DTG |

## DEFENDANT META PLATFORMS, INC.'S
## REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. Dialect's "each stage" theory is flawed and, in any event, a POSITA would lack any assurance it is the correct interpretation. ................................. 2

    B. Dialect's straw-man arguments mischaracterize (or misunderstand) Defendant's indefiniteness position. ................................................................. 5

    C. Dialect has no answer to whether "each stage of processing the received user utterance" can encompass steps not recited in the claim, underscoring a POSITA's lack of reasonable certainty. ............................................................ 8

    D. Dialect misunderstands why "usable" creates intolerable uncertainty. ............ 9

III. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Dialect, LLC v. Amazon.com Inc.*,
No. 1:23-cv-581, 2024 WL 1859806 (E.D. Va. Apr. 29, 2024) ....................2

*Dialect, LLC v. Amazon.com Inc.*,
No. 1:23-cv-581 (E.D. Va. filed May 1, 2023) ....................2

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) ....................1

*Halliburton Energy Servs., Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008) ....................8, 9

*IQASR LLC v. Wendt Corp.*,
825 F. App'x 900 (Fed. Cir. 2020) ....................10

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015) ....................5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ....................1, 5

*U.S. Well Services, LLC v. TOPS Well Services*,
No. 3:19-CV-00237, 2020 WL 9439469 (S.D. Tex. Sept. 18, 2020) ....................7, 8

*U.S. Well Servs., Inc. v. Halliburton Co.*,
No. 6:21-cv-00367, 2022 WL 819548 (W.D. Tex. Jan. 17, 2022) ....................1

*Versata Software, Inc. v. Zoho Corp.*,
213 F. Supp. 3d 829 (W.D. Tex. 2016) ....................9

*WAPP Tech Ltd. P'ship v. Bank of Am., N.A.*,
No. 4:21-CV-670, 2022 WL 2463569 (E.D. Tex. July 6, 2022) ....................10

*WSOU Investments LLC v. OnePlus Technology (Shenzhen) Co.*,
No. 20-CV-00952, 2022 WL 3500120 (W.D. Tex. May 24, 2022) ....................7

**Federal Statutes**

35 U.S.C. § 112 ¶ 2 ....................5, 10

**Other Authorities**

U.S. Patent No. 8,015,006 ....................2

I.  **INTRODUCTION**

Plaintiff Dialect fails to rebut Defendant's clear and convincing showing that the phrase "usable at each stage of processing the received user utterance" in limitation 1[b] of the '209 patent is indefinite. For the first time, Dialect offers an interpretation of what "each stage of processing the received user utterance" means, but its interpretation is flawed and rests on nothing more than the *ipse dixit* of its expert. And even if—setting those flaws aside—its proffered meaning is plausible, that doesn't cut it under *Nautilus*. A POSITA must be able to discern the boundaries of the claim with reasonable certainty; that a POSITA can cobble together one potential (but still flawed) guess at what claim language might mean is insufficient. But that is all Dialect has done. Dialect's attempt to rescue "usable" from indefiniteness fares no better: it effectively argues that lay meaning, combined with the claim language itself, offers all the certainty Section 112 demands. But that fails to answer the undisputedly essential question: "usable" how, or for what purpose?

Dialect also argues that finding limitation 1[b] indefinite would be "extraordinary" at claim construction. Resp. at 1.[1] Not so. Indeed, the Federal Circuit has held that the indefiniteness inquiry is "in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Unsurprisingly, indefiniteness challenges are routinely addressed during claim construction, and courts show no hesitation to invalidate claims whose terms fail to furnish reasonable certainty regarding claim scope. *See, e.g.*, *U.S. Well Servs., Inc. v. Halliburton Co.*, No. 6:21-cv-00367, 2022 WL 819548, at *5–10 (W.D. Tex. Jan. 17, 2022). Based on the clear evidence put forth by Defendant, the Court should find limitation 1[b] indefinite.

---

[1] As used herein, "Br." refers to Defendant's Opening Claim Construction Brief (Dkt. 96), "Crovella Decl." refers to the Declaration of Dr. Mark E. Crovella, Ph.D. filed therewith (Dkt. 96-1), "Resp." refers to Dialect's Responsive Claim Construction Brief (Dkt. 97), "Jagadish Decl." refers to the Declaration of Dr. H. V. Jagadish filed by Dialect (Dkt. 97-1), and "Crovella Reply Decl." refers to the Reply Declaration of Dr. Mark E. Crovella, Ph.D. filed herewith.

II.     ARGUMENT

      A.     **Dialect's "each stage" theory is flawed and, in any event, a POSITA would lack any assurance it is the correct interpretation.**

Dialect does not dispute that, for a POSITA to understand the scope of claim 1 with reasonable certainty, they must know what the "stage[s] of processing the received user utterance" are. *See* Br. at 6–7. But Dialect argues a POSITA would know that "each stage of processing the received user utterance" in limitation 1[b] "obvious[ly]" refers to all the method steps recited in claim 1, "from capture/receipt through recognition, parsing/context determination, agent invocation, and response." Resp. at 3–6; *see also id.* at 3–4 (summarizing steps of claim and arguing that "[i]n ordinary technical usage, those operations are the stages of the utterance-processing pipeline"). According to Dialect, the claim describes a "speech-interface processing pipeline" and that "[t]he claim itself identifies the stages of processing by reciting the processing pipeline." *Id.* at 1, 3–4. Dialect's argument suffers from numerous flaws.

      First, no intrinsic evidence describes the claimed invention as a "pipeline." Indeed, the specification does not even contain that term. Dialect's "pipeline" characterization is thus supported by nothing but the *ipse dixit* of its expert, Dr. Jagadish.[2]

---

[2] Dr. Jagadish also erroneously applies a POSITA definition that was already adjudicated incorrect in Dialect's earlier suit against Amazon—*Dialect, LLC v. Amazon.com Inc.*, No. 1:23-cv-581 (E.D. Va. filed May 1, 2023). There, Dialect asserted U.S. Patent No. 8,015,006, a continuation of the '209 patent with the same specification. At claim construction, Dialect and Dr. Jagadish proposed the same POSITA definition he applies here. *Compare* Jagadish Decl. ¶ 12, *with Dialect, LLC v. Amazon.com Inc.*, No. 1:23-cv-581, 2024 WL 1859806, at *4 (E.D. Va. Apr. 29, 2024) *and id.*, Dkt. 170-1 ¶ 11 (Declaration of Dr. Jagadish). The court ruled that Dr. Jagadish's reliance on "engineering" generally was too broad as it "would allow a civil engineer with two years of experience designing bridges to qualify" as a POSITA, even though "[s]uch a person would struggle to understand the circuits, flowcharts and modules described in the patents." 2024 WL 1859806, at *5. Despite that ruling, Dr. Jagadish applies the same broad POSITA definition here, relying on a degree in any kind of "engineering" and two years of experience with any kind of "engineering" as supplying the skills required to qualify as a POSITA. If the Court rejects Dr.

Second, notwithstanding Dialect's suggestion otherwise, the claim never "identifies the stages of processing." *Id.* at 3. Indeed, Dialect does not dispute that there is no explicit or implicit antecedent basis for the recited "each stage of processing the received user utterance." *See id.* at 5–6; Br. at 7; Crovella Decl. ¶¶ 40–41. Just because the claim <u>recites</u> steps that, according to Dialect, are the "stage[s] of processing the received user utterance" does not mean a POSITA could conclude with reasonable certainty that "each stage of processing the received user utterance" <u>refers</u> to those claim-recited steps. Limitation 1[b] does not, for example, recite "at each step of the method," which would clearly denote all the steps recited in the claim; it recites "at each stage of processing the received user utterance." Nothing in the intrinsic record would allow a POSITA to conclude with reasonable certainty that the latter phrase refers to all recited steps of the claim, as Dialect argues. Resp at 3–5. Indeed, Dialect does not dispute that the specification and prosecution history never explicitly discuss "processing the received user utterance," much less identify the "stage[s]" thereof. *See* Br. at 8; Crovella Decl. ¶¶ 43, 54.

Third, Dialect's lawyers and its own expert can't even agree on which of the steps in claim 1 constitute "stage[s] of processing the received user utterance." *See* Crovella Reply Decl. ¶¶ 6–8. On the one hand, Dr. Jagadish asserts that "[t]he phrase 'processing the received user utterance' refers to what the method does with the utterance ***after it is received***" and "[a] POSITA would understand that the utterance is 'processed' by performing ***the steps that follow in the claim*** (recognition, parsing, etc.)." Jagadish Decl. ¶ 30 (emphases added). Limitation 1[a] is where the user utterance is "received" in the method of claim 1. Crovella Reply Decl. ¶ 7. Thus, accepting *arguendo* Dr. Jagadish's opinion, it would follow that limitation 1[a] is not a "stage of processing

---

Jagadish's POSITA definition, as it should, it is unclear if he is qualified to offer the opinions in his declaration.

3

the received user utterance." *Id.* By contrast, Dialect's lawyers argue that limitation 1[a] is a "stage of processing the received user utterance" because, according to them, "processing the received user utterance" would be understood by a POSITA to denote "handl[ing] a user utterance *from capture/receipt* through recognition, parsing/context determination, agent invocation, and response." Resp. at 6 (emphasis added); *see also* Crovella Reply Decl. ¶ 8. That Dialect's lawyers and its expert can't even agree on claim scope underscores the uncertainty a POSITA would face in determining what the relevant "stage[s]" are. *See* Crovella Reply Decl. ¶ 8.

Fourth, the claim language itself suggests that at least one of the claim steps may not be a "stage of processing the received user utterance," contrary to Dialect's position that it would be "obvious" to a POSITA that those "stage[s]" are all the recited steps. Resp. at 5. Limitation 1[a] provides that the user utterance "contain[s] at least one request." Limitation 1[h], the last step in claim 1, refers to the request using the past tense of "process": "presenting results of the *processed request* to the user . . . ." As Dr. Crovella explains, that past-tense usage would imply to a POSITA that, by the time limitation 1[h] is reached, "processing" of the user's utterance is already complete, and that, accordingly, limitation 1[h] cannot logically be a "stage of processing the received user utterance" within the meaning of limitation 1[b]. Crovella Reply Decl. ¶ 9. Contrary to Dialect's and Dr. Jagadish's position, a POSITA would have substantial doubt that limitation 1[h] should be considered a "stage of processing the received user utterance." *Id.*

Fifth, Dialect's position is also at odds with the specification, which explains that a user's utterance is "processed" in steps 302 and 304 of Figure 3 (e.g., "so that the data is in a more machine understandable format such as in a digital format"), but does not use similar language to refer to later steps. '209 patent at 21:45–22:33.

Even if Dialect has advanced one plausible meaning for "each stage of processing the

4

received user utterance"—as explained above, it hasn't—there are other interpretations that are at least as plausible. For example, given the past-tense reference to the "processed request" in limitation 1[h] (as discussed above), "each stage of processing the received user utterance" could just as plausibly be read to exclude limitation 1[h]. *See* Crovella Reply Decl. ¶ 9. It is not enough that one "can ascribe *some* meaning to a patent's claims." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 911 (2014). A POSITA must have "reasonable certainty" about the scope of the claim. *Id.* Where, as here, claim language "might mean several different things" a POSITA must be able to make an "informed and confident choice." *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015). Dialect's flawed arguments, supported only by *ipse dixit* from Dr. Jagadish, fall far short of showing that a POSITA could make such a choice.

## B. Dialect's straw-man arguments mischaracterize (or misunderstand) Defendant's indefiniteness position.

Dialect repeatedly erects and attacks straw-man arguments that mischaracterize (or misunderstand) Defendant's position on why limitation 1[b] fails to satisfy Section 112 ¶ 2.

First, Dialect incorrectly claims that Defendant's "threshold premise" is that "a POSITA could not identify *any* 'stage[s] of processing the received user utterance' *at all*," and asserts that this premise is "defeat[ed]" by Defendant's concession that the specification could suggest to a POSITA that limitations 1[c] and 1[d] may be "stage[s] of processing the received user utterance." Resp. at 4 (emphases added). Contrary to Dialect's argument, Defendant's position does not rest on this supposed premise; rather, indefiniteness arises from a POSITA's inability to identify <u>all</u> the relevant stages with reasonable certainty, which Dialect concedes (or at least does not dispute) is necessary for a POSITA to understand the scope of claim 1 with reasonable certainty. *See* Br. at 6–7. Thus, as Defendant explained, "even assuming *arguendo* that limitations 1[c] and 1[d] each constitute 'stage[s] of processing the received user utterance,' a POSITA still would not know with

5

reasonable certainty what the other 'stage[s]' are, if any." Br. at 10. Moreover, Defendant's concession was based on exemplary embodiments that could suggest that limitations 1[c] and 1[d] may be "stage[s] of processing the received user utterance." *See id.* at 9 (discussing limitations 1[c] and 1[d]); Crovella Decl. ¶¶ 48–49, 52–53; '209 patent at 17:1–16, 17:41–56. But there are no equivalent examples in the specification for any other limitation of claim 1 that Dialect asserts are "stage[s] of processing," and Dialect does not contend there are. Crovella Reply Decl. ¶ 10.

Second, Dialect incorrectly claims that "[Defendant]'s 'each stage' theory depends on the claim's open-ended transition 'comprising'" in the preamble of claim 1. Resp. at 1. Dialect then argues, based on that mischaracterization, that Defendant's position would "turn the word 'comprising' into an indefiniteness trap" and "wreck routine claim drafting" because "open-ended method claims are ubiquitous." *Id.* at 1–2, 9–10; *see also id.* at 4 (arguing that Defendant's "real complaint is different: because claim 1 uses 'comprising,' [Defendant] argues a POSITA must also treat unrecited, product-specific operations . . . as additional 'stages,' creating indefiniteness."). Dialect's argument rests on a mischaracterization of Defendant's position. As Defendant's opening brief explained, the open-ended transitional term "comprising" in the claim preamble merely exacerbates the lack of reasonable certainty arising from the claim phrase "each stage of processing the received user utterance," because a POSITA would "not know whether unrecited steps may constitute a 'stage of processing the received user utterance,'" and, if so, which ones. Br. at 10. For example, the specification explains that, after being received, a user's utterance "may be processed so that the data is in a more machine understandable format such as in a digital format." '209 patent at 21:53–56. A POSITA would not know with reasonable certainty whether this step, which is not recited in the claim, should nonetheless be considered a "stage of processing the received user utterance." But even setting aside the preamble's use of "comprising," a POSITA

6

still "would not know with reasonable certainty which, if any, method steps recited in the body of the claim are 'stage[s] of processing the received user utterance.'" Br. at 10. Thus, contrary to Dialect's suggestion, the indefiniteness of "each stage of processing the received user utterance" in limitation 1[b] does not turn solely on the preamble's use of "comprising."

Third, Dialect claims that Defendant "equates breadth with indefiniteness" and that claim breadth is different from—and does not create—indefiniteness. Resp. at 3, 10. But as Dialect's own cited cases illustrate, breadth is not why limitation 1[b] is indefinite. For example, Dialect cites *WSOU Investments LLC v. OnePlus Technology (Shenzhen) Co.*, No. 20-CV-00952, 2022 WL 3500120 (W.D. Tex. May 24, 2022), which held that the verb "process" in a claim requiring a processor to "process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension" was not indefinite. *Id.* at *19–21. The defendant argued indefiniteness because the claim imposed no limits on how the "process[ing]" must be done. *Id.* at *20 (arguing that "nothing in the claim explains how to 'process' the indication" and the specification "provides no information how the indication would be 'processed'"). The court concluded that "the word 'process' is a well-understood word in the computer arts," and that while it "has a broad meaning," "breadth is not indefiniteness." *Id.* (quoting *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017)). While limitation 1[b] similarly recites the term "processing," it is not the mere breadth of that term that creates indefiniteness here, but rather the lack of reasonable certainty about what the "stage[s] of processing the received user utterance" are. Dialect also cites *U.S. Well Services, LLC v. TOPS Well Services*, No. 3:19-CV-00237, 2020 WL 9439469 (S.D. Tex. Sept. 18, 2020), which involved claims to a hydraulic fracturing pump that required the pump to be "capable of pumping the hydraulic fracturing fluid at high pressure . . . so that the fracturing fluid enters and cracks the

7

formation." *Id.* at *24. The defendant argued indefiniteness on the ground that "whether a particular system infringed these claims . . . would change depending on where and how it was used," but there is "no possible way" for a POSITA to determine whether a given pump is capable of cracking a particular rock formation because "there are too many variables involved." *Id.* Unlike in *U.S. Well Services*, Defendant's position is not based on the purported complexity of performing an infringement analysis for limitation 1[b].

### C. Dialect has no answer to whether "each stage of processing the received user utterance" can encompass steps not recited in the claim, underscoring a POSITA's lack of reasonable certainty.

As Defendant's opening brief explained, because the preamble of claim 1 uses the open-ended transitional term "comprising," a POSITA would not know with reasonable certainty whether the "stage[s] of processing the received user utterance" in limitation 1[b] can encompass unrecited steps (and if so, which ones), multiplying a POSITA's uncertainty about the claim's boundaries. *See* Br. at 1, 10; Crovella Decl. ¶ 55. If anything, Dialect's response underscores this concern. Neither Dialect nor Dr. Jagadish give an answer, one way or the other, to whether unrecited steps can be "stage[s] of processing the received user utterance" at which the "dynamic set" must be usable. Instead, Dialect dismisses this question as "an infringement/application question at the margins," Resp. at 4, but Dialect is wrong. As the Federal Circuit has explained, when claim language "requires that an artisan make a separate infringement determination for every set of circumstances in which [an invention] may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that [language] is likely to be indefinite." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) (finding term "fragile gel" indefinite because same composition could satisfy the claim language in some drilling applications but not others). If, for example, unrecited steps can be "stage[s] of processing the received user utterance," then the same "dynamic set" might

8

meet limitation 1[b] in some applications but not others, which is a sign of indefiniteness. *Halliburton*, 514 F.3d at 1255; *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 838 (W.D. Tex. 2016) ("[W]hether a certain user is infringing the asserted claims is context-dependent, and a context-dependent infringement determination is likely indefinite.").

### D. Dialect misunderstands why "usable" creates intolerable uncertainty.

As Defendant's opening brief explained, a POSITA would also lack reasonable certainty about how to determine whether a given "dynamic set" is "usable" as required by limitation 1[b], because that requirement is recited without specifying how, or for what purpose, the dynamic set must be "usable," and there is no intrinsic or extrinsic evidence that answers this question with reasonable certainty. Br. at 11–14; Crovella Decl. ¶¶ 28–38.

Dialect's response reflects a misunderstanding of Defendant's position. The issue is not that "usable" is a subjective term that depends on a person's "taste," as Dialect's response suggests. Resp. at 6–7 (arguing that "usable" is an "objective" concept, "not a subjective term of taste"). The crux of the indefiniteness issue is that, while the claim purports to specify <u>when</u> the dynamic set must be "usable" (although that too fails to provide reasonable certainty, as explained above), a POSITA would not know with reasonable certainty how, or for what purpose, it must be "usable."

Neither Dialect nor Dr. Jagadish dispute that an answer to this question—"usable" to do what or for what purpose?—is essential for a POSITA to know with reasonable certainty the scope of the claim. *See* Crovella Decl. ¶ 29; Resp. at 7–9; Jagadish Decl. ¶¶ 17–27. According to Dialect, however, "[t]he claim itself answers" this question, and the answer is that the dynamic set of prior probabilities or fuzzy possibilities must be usable for "processing the received user utterance." Resp. at 7. But this supposed answer, which simply points to the final clause of limitation 1[b], does not answer the undisputedly essential question (how, or for what purpose?), because that clause only purports to address <u>when</u> the dynamic set must be "usable." As a fallback, Dialect

9

argues that a POSITA's uncertainty would be resolved by the specification's "examples of how the dynamic set is used during processing stages." Resp. at 8 (citing '209 patent at 17:15–21, 17:45–60, and 18:4–15); *see also* Jagadish Decl. ¶ 21 (citing "an example" from specification). But Dialect acknowledges—as it must—that these are "embodiment-specific" examples, and it expressly disclaims that it is "not . . . importing a limitation" into the claims based on these examples. Resp. at 7–8. Dialect's "reliance on a particular disclosed embodiment is unavailing because claim scope is ordinarily not limited to the disclosed embodiments." *WAPP Tech Ltd. P'ship v. Bank of Am., N.A.*, No. 4:21-CV-670, 2022 WL 2463569, at *20 (E.D. Tex. July 6, 2022); *see also IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 906 (Fed. Cir. 2020) ("[N]on-limiting examples do not on their own expressly define the bounds—the *limits*—of the claim.").

Dialect also argues that "usable" is a "straightforward technical requirement" and an "objective, engineering concept," Resp. at 7, but neither Dialect nor Dr. Jagadish dispute Defendant's evidence that there was no generally accepted understanding available to a POSITA of what "usable" meant in relation to "prior probabilities or fuzzy possibilities" (or a "dynamic set" thereof), or even more generally within the context of a "method responsive to a user generated natural language speech utterance." *See* Crovella Decl. ¶¶ 36–37. Indeed, Dr. Jagadish concedes that "'usable' is not a specialized term of art [in] speech recognition." Jagadish Decl. ¶ 27. Thus, there is no dispute that a POSITA would have had nothing to draw on but a lay understanding of "usable," but a POSITA would fare no better with a lay understanding for the reasons Defendant and Dr. Crovella have explained. Br. at 12–13; Crovella Decl. ¶ 38. As a result, a POSITA would be unable to discern the boundaries—the *limits*—of "usable" with reasonable certainty.

### III.  CONCLUSION

The Court should find the phrase "usable at each stage of processing the received user utterance," in limitation 1[b] of the '209 patent, indefinite under 35 U.S.C. § 112 ¶ 2.

10

Dated: January 15, 2026

Respectfully submitted,

By: /s/ Melissa R. Smith
MELISSA SMITH Texas Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, Texas 75670
Tel. 903.934.8450
Fax 903.934.9257

DAVID SILBERT (*pro hac vice*)
dsilbert@keker.com
SHARIF E. JACOB (*pro hac vice*)
sjacob@keker.com
PAVEN MALHOTRA (*pro hac vice*)
pmalhotra@keker.com
CHRISTINA LEE (*pro hac vice*)
clee@keker.com
KRISTEN E. LOVIN (*pro hac vice*)
klovin@keker.com
VISHESH NARAYEN (*pro hac vice*)
vnarayen@keker.com
STEPHANIE J. GOLDBERG (*pro hac vice*)
sgoldberg@keker.com
ASEEM MEHTA (*pro hac vice*)
amehta@keker.com
AMRUTHA DORAI (*pro hac vice*)
adorai@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant
META PLATFORMS, INC.

**CERTIFICATE OF SERVICE**

    The undersigned certifies that a copy of the foregoing instrument was served upon the parties, or the attorney(s) of record for all parties to the above cause in accordance with the Federal Rules of Civil Procedure on this 15th day of January 2026.

                                                */s/ Melissa R. Smith*
                                                Melissa R. Smith