# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

DIALECT, LLC,

        Plaintiff,

v.

META PLATFORMS, INC.,

        Defendant.

Case No. 7:25-cv-00060-DC-DTG

**REPLY DECLARATION OF DR. MARK E. CROVELLA, PH.D. REGARDING CLAIM CONSTRUCTION OF CERTAIN TERMS IN U.S. PATENT NO. 7,398,209**

_/s/ Mark Crovella_

Dr. Mark E. Crovella, Ph.D

Dated: January 15, 2026

3948612

I, Mark E. Crovella, hereby declare and state as follows:

1.  I have been retained on behalf of Defendant Meta Platforms, Inc. ("Meta"), in connection with the above-captioned litigation, as an independent technical expert to offer my opinions regarding the scope and meaning that would have been given to certain terms in the claims of U.S. Patent Nos. 7,398,209 ("the '209 patent") by a person of ordinary skill in the art ("POSITA") at the time of the alleged invention.

2.  I previously provided a declaration in this matter ("Opening Declaration"), dated November 21, 2025, in which I offered my opinion on whether certain terms appearing in claim 1 of the '209 patent inform, with reasonable certainty, a POSITA about the scope of the claimed invention. More specifically, my Opening Declaration set forth and explained my opinion that the element of claim 1 reciting "usable at each stage of processing the received user utterance" fails to inform, with reasonable certainty, those of ordinary skill in the art about the scope of the claimed invention.

3.  I have been informed and understand that on December 18, 2025, Plaintiff filed a Responsive Claim Construction Brief,[1] which was accompanied by a declaration from Dr. Hosagrahar V. Jagadish ("Jagadish Declaration"),[2] a professor at the University of Michigan. In his declaration, Dr. Jagadish disagrees with my opinion. This reply declaration sets forth my reply regarding various points of disagreement raised by Dr. Jagadish.

## I.  REPLY OPINIONS REGARDING THE '209 PATENT

4.  As an initial matter, I note that Dr. Jagadish applies a somewhat different definition of the skill level of a POSITA from me. Specifically, Dr. Jagadish applies the

---

[1] Dkt. 97.
[2] Dkt. 97-1 ("Jagadish Decl.").

1

following definition: "a POSITA in June 2002 for the '209 Patent would have at least a bachelor-level degree in computer science, computer engineering, electrical engineering, engineering, or a related field, and two years of experience with speech recognition, natural language processing, engineering, and/or equivalent education, research experience, or knowledge."[3] While Dr. Jagadish asserts that "Dr. Crovella has applied this definition,"[4] that is incorrect. Most notably, Dr. Jagadish's POSITA definition is different in that it allows for education and experience in any kind of "engineering," which is broader than the definition I applied.[5]

5. In general, I disagree with the opinion of Dr. Jagadish that the terms/phrases "usable" and "each stage of processing the received user utterance," as recited in limitation 1(b), provides a POSITA with reasonable certainty regarding the scope of the claim. I stand by the opinions in my Opening Declaration, which thoroughly show why Dr. Jagadish is incorrect.

6. I have reviewed both Plaintiff's Responsive Claim Construction Brief and the Jagadish Declaration, and I note that there is lack of consistency that is evident between the position of Plaintiff and Dr. Jagadish regarding what the "stage[s] of processing the received user utterance" are. In other words, it is apparent that Plaintiff and Dr. Jagadish do not agree, between them, on what exactly constitutes the "stage[s] of processing the received user utterance."

7. On the one hand, Dr. Jagadish opines that "each stage of processing the received user utterance," as recited in limitation 1(b), refers to all the claim steps that follow limitation 1(b) in claim 1—i.e., limitations 1(c)–1(h) ("recognizing words and phrases . . ." through "presenting results of the processed request . . ."). For example, Dr. Jagadish asserts that "[t]he

---

[3] Jagadish Decl. ¶ 12.
[4] Jagadish Decl. ¶ 12.
[5] See Opening Declaration ¶ 22.

phrase 'processing the received user utterance' refers to what the method does with the utterance *after it is received*."[6] Dr. Jagadish similarly asserts that "[a] POSITA would understand that the utterance is 'processed' by performing *the steps that follow in the claim* (recognition, parsing, etc.), which are the stages of processing."[7] Dr. Jagadish likewise asserts that "the stages of 'processing the received user utterance' naturally correspond to the claim-recited processing steps," and identifies those processing steps as "recognition" (corresponding to limitation 1(c)), "parsing/context determination" (corresponding to limitation 1(d)), "agent selection" (corresponding to limitation 1(e)), "request formulation" (corresponding to limitation 1(f)), "agent invocation" (corresponding to limitation 1(g)), and "presentation of results" (corresponding to limitation 1(h)).[8] In the method of claim 1, the user utterance is "received" in limitation 1(a), which recites "receiving the user generated natural language speech utterance, the received user utterance containing at least one request." Thus, according to Dr. Jagadish's opinion that "[t]he phrase 'processing the received user utterance' refers to what the method does with the utterance *after it is received*,"[9] a POSITA would not consider this step of the claim (that is, limitation 1(a)) to be a "stage of processing the received user utterance."

---

[6] Jagadish Decl. ¶ 30 (emphasis added).

[7] Jagadish Decl. ¶ 30 (emphasis added); *see also id.* ¶ 37 ("The relevant stages are those of the utterance-processing method recited in the claim and described in the patent at the functional level (e.g., *recognition*, *parsing*/context determination, agent *selection*, request *formulation*, agent *invocation*, results *presentation*)." (emphases added)); *id.* ¶ 39 ("In my opinion, a POSITA would understand this language to require that the claimed dynamic set of prior probabilities or fuzzy possibilities be maintained in a condition that remains available for use throughout the utterance-processing pipeline, including *at least the claim-recited stages such as recognition and parsing* and the *subsequent stages* of routing, request formulation, and response generation." (emphases added)).

[8] Jagadish Decl. ¶ 29.

[9] Jagadish Decl. ¶ 30 (emphasis added).

3

8. On the other hand, Plaintiff asserts that "each stage of processing the received user utterance," as recited in limitation 1(b), refers not only to all the steps that follow limitation 1(b) in claim 1—i.e., limitations 1(c)–1(h)—but also to the initial step of receiving the user utterance recited in limitation 1(a) (i.e., "receiving the user generated natural language speech utterance, the received user utterance containing at least one request"). For example, Plaintiff asserts that claim 1 "describes a speech-interface processing pipeline (*receive* → recognize → parse/context → select agent → formulate → invoke → present)" and that limitation 1(b) "requires that a 'dynamic set of prior probabilities or fuzzy possibilities' be maintained so it remains available for use *throughout the utterance-processing pipeline*."[10] Plaintiff similarly asserts that claim 1 "is directed to '[a] method responsive to a user generated natural language speech utterance, comprising' a set of concrete steps" including "receiving the utterance," and that "[i]n ordinary technical usage, *those operations are the stages of the utterance-processing pipeline recited in the claim*."[11] Likewise, Plaintiff asserts that process 400 shown in Figure 4A of the patent "depicts how the system handles a user utterance *from capture/receipt* through recognition, parsing/context determination, agent invocation, and response" and that "[t]hat is 'processing the received user utterance' in plain English and in a POSITA's technical understanding."[12] There is thus an obvious inconsistency between the position of Plaintiff and Dr. Jagadish regarding what the "stage[s] of processing the received user utterance" are, which further supports my opinion regarding the lack of reasonable certainty a POSITA would have regarding "each stage of processing the received user utterance."

---

[10] Dkt. 97 at 1 (Plaintiff's Responsive Claim Construction Brief) (emphasis added).

[11] Dkt. 97 at 3–4 (Plaintiff's Responsive Claim Construction Brief) (emphasis added); *see also id.* at 4–5 (arguing that "'[p]rocessing the received user utterance' is what the claimed method *does* through the enumerated steps").

[12] Dkt. 97 at 6 (emphasis added).

4

9. In addition, a POSITA would view Dr. Jagadish's opinion regarding the "stage[s] of processing the received user utterance" as difficult to reconcile with the claim language. According to Dr. Jagadish, a POSITA would understand that the "stage[s] of processing the received user utterance" include limitation 1(h), the last limitation of claim 1, which recites "presenting results of the processed request to the user, the presented results generated as a result of the invoked domain agent processing the formulated request."[13] Limitation 1(a) provides that the received user utterance "contain[s] at least one request." The fact that limitation 1(h) refers to the "request" in the user utterance as already having been "processed" would imply to a POSITA that, by the time limitation 1(h) is reached, the user's utterance has already been "processed." In other words, in view of the past-tense reference to the "processed request" in limitation 1(h), a POSITA would infer that "processing the received user utterance" is complete by the time limitation 1(h) is reached, and that, by implication, limitation 1(h) is likely not a "stage of processing the received user utterance" within the meaning of limitation 1(b). Nevertheless, however, given the absence of any intrinsic evidence that would have enabled a POSITA to determine, with reasonable certainty, what are the "stage[s] of processing the received user utterance,"[14] a POSITA would not know how conclusively to treat this inference. That is, contrary to Dr. Jagadish's opinion, a POSITA would have substantial doubt that limitation 1(h) should be considered a "stage of processing the received user utterance," but

---

[13] *See, e.g.*, Jagadish Decl. ¶ 29 ("Here, the stages of 'processing the received user utterance' naturally correspond to the claim-recited processing steps (recognition, parsing/context determination, agent selection, request formulation, agent invocation, and ***presentation of results***)." (emphasis added)); *id.* ¶ 37 ("The relevant stages are those of the utterance-processing method recited in the claim and described in the patent at the functional level (e.g., recognition, parsing/context determination, agent selection, request formulation, agent invocation, ***results presentation***)." (emphasis added)).

[14] *See* Opening Declaration ¶¶ 42–54.

nevertheless could not be reasonably certain whether or not it should be considered such a "stage."

10. In my Opening Declaration, I explained that portions of the specification—specifically the discussions in column 17, lines 1–16 and lines 41–56—could suggest to a POSITA that limitations 1(c) and 1(d) might be considered "stage[s] of processing the received user utterance" as recited in limitation 1(b). *See* Opening Declaration ¶¶ 48–49, 52–53. As reflected by the detailed review of the specification contained in my Opening Declaration, there is nothing equivalent for the other limitations of claim 1—that is, no discussion in the specification that could similarly suggest to a POSITA that other limitations might be considered "stage[s] of processing the received user utterance."

## II. RESERVATIONS

11. I reserve the right to supplement and/or modify my opinions set forth herein and in my Opening Declaration, as well as the bases for my opinions, depending on any information subsequently provided by Plaintiff, including to the extent that Plaintiff purports to provide any further rebuttal to my opinions or the bases therefor, or supply further alleged rebuttal evidence such as expert opinion, additional documents, testimony, or other information. In the event that I am asked or given the opportunity to provide testimony at a hearing in this matter, such as a claim construction hearing, I reserve the right to provide additional information on my knowledge, skills, experience and other qualifications, to discuss further background on the patent and relevant art, to use visual aids to illustrate and/or summarize my testimony, and to supplement my opinions with information requested by the Court.

I declare under penalty of perjury that the foregoing is true and correct.