**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| DIALECT, LLC | |
| *Plaintiff,* | |
| v. | Case No. 7:25-CV-00060-DC-DTG |
| META PLATFORMS, INC., | |
| *Defendant.* | |

**PLAINTIFF DIALECT, LLC'S**
**<u>SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

    A.   Meta's Acknowledgment That the Specification "Could Suggest" Stages and the Dependent Claims Undermine Its Indefiniteness Theory ......... 2

    B.   There Is No Conflict Between Dialect's Counsel and Dr. Jagadish ................. 4

    C.   Dr. Crovella's "Past Tense" Argument Does Not Create Indefiniteness .......... 5

    D.   Dialect's "Pipeline" Characterization Is Supported by Intrinsic Evidence ................................................................................................ 6

    E.   Meta's "Comprising" Argument Conflates Definiteness with Infringement ............................................................................................ 7

    F.   "Usable" Has an Objective Meaning in Context ............................................. 8

    G.   Meta's Challenge to Dr. Jagadish's POSITA Definition Does Not Affect the Analysis ...................................................................................... 10

III. CONCLUSION ............................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
 418 F.3d 1225 (Fed. Cir. 2005)..................................................................................7

*Dialect, LLC v. Amazon.com Inc.*
 No. 23-cv-581 (E.D. Va.)........................................................................................10

*Halliburton Energy Services, Inc. v. M-I LLC*,
 514 F.3d 1244 (Fed. Cir. 2008)..............................................................................7, 8

*IMRA Am., Inc. v. IPG Photonics Corp.*,
 No. 06-15139, 2010 WL 5420552 (E.D. Mich. Dec. 27, 2010) ...............................9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 572 U.S. 898 (2014)..........................................................................1, 2, 3, 6, 7

*Nevro Corp. v. Bos. Sci. Corp.*,
 955 F.3d 35 (Fed. Cir. 2020)...................................................................................7, 8

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (en banc)............................................................3, 8, 9

## I.    INTRODUCTION

The disputed phrase "usable at each stage of processing the received user utterance" in claim 1(b) of the '209 Patent has objective boundaries grounded in the intrinsic record. A person of ordinary skill in the art ("POSITA") would understand "stage" to refer to the functional processing phases recited for the received user utterance in claim 1—recognizing, parsing, selecting, formulating, invoking, and presenting—and would understand "usable" to mean that the dynamic set of prior probabilities or fuzzy possibilities must be maintained in a form accessible to those processing phases. The dependent claims confirm this by tracing specific uses of the dynamic set through the processing pipeline: updating recognition tables (claim 2), matching keywords for context (claim 4), inferring formulation parameters (claim 6), scoring results (claims 8–9), and varying presentation terminology (claim 13). This intrinsic evidence provides the "reasonable certainty" that *Nautilus* requires. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).

Meta's Reply Claim Construction Brief (Dkt. 98) ("Reply") does not confront this intrinsic evidence. Instead, Meta advances four arguments that mischaracterize Dialect's position, demand a level of precision that *Nautilus* expressly rejected, or conflate definiteness with infringement:

First, Meta argues that a POSITA must be able to identify "all" relevant stages with reasonable certainty and suggests that specification passages "could suggest" that limitations 1[c] and 1[d] are stages but that "there is nothing equivalent for the other limitations . . . ." Reply at 5–6; Reply Declaration of Dr. Crovella (Dkt. 98-1) ("Crovella Reply Decl.") ¶ 10. But the dependent claims provide explicit intrinsic support for treating other claim steps as stages, and Meta's own acknowledgment that the specification "could suggest" at least two stages undermines any argument that the phrase is wholly unbounded.

Second, Meta and Dr. Crovella contend that Dialect's counsel and Dr. Jagadish "can't even agree" on claim scope because Dr. Jagadish described processing as occurring "after" receipt while

Dialect's brief mentioned "capture/receipt." Reply at 3–4; Crovella Reply Decl. ¶¶ 6–8. This argument rests on a misreading: Dr. Jagadish described timing of the steps (the utterance is received, then processed), while the brief described the direction of the flow. There is no conflict.

Third, Meta argues that "comprising" creates indefiniteness because a POSITA would not know whether unrecited steps qualify as "stages." Reply at 8–9. But open-ended claims are ubiquitous, and any question about whether an accused product's additional operations fall within "processing the received user utterance" is an infringement question, not a definiteness problem.

Fourth, Meta argues that "usable" lacks certainty because the claim does not specify "how, or for what purpose" the dynamic set must be usable. Reply at 9–10. But the claim itself specifies the purpose—usable "at each stage of processing the received user utterance"—and the dependent claims demonstrate precisely how the dynamic set is used at each stage.

Given the numerous arguments identified above, Meta has not carried its clear-and-convincing burden. Meta has not identified any alternative interpretation of "each stage of processing the received user utterance" that is grounded in the intrinsic record; instead, it points only to hypothetical questions and semantic quibbles that do not rise to the level of competing constructions. *Nautilus* requires reasonable certainty, not the elimination of all marginal disputes. The Court should reject Meta's indefiniteness challenge.

## II.    ARGUMENT

### A.    Meta's Acknowledgment That the Specification "Could Suggest" Stages and the Dependent Claims Undermine Its Indefiniteness Theory

Meta's indefiniteness theory rested on the premise that a POSITA would not know "what the 'stage[s] of processing the received user utterance' are." Meta's Opening Claim Construction Brief (Dkt. 96) ("Opening") at 6–7. In the Reply, Dr. Crovella acknowledges that "portions of the specification—specifically the discussions in column 17, lines 1–16 and lines 41–56—could

suggest to a POSITA that limitations 1[c] and 1[d] might be considered 'stage[s] of processing the received user utterance.'" Crovella Reply Decl. ¶ 10; *see also* Reply at 5–6 (arguing indefiniteness arises from inability to identify "all" stages).

This acknowledgment undermines Meta's theory. Once the specification provides guidance that "could suggest" which claim steps are stages, Meta cannot maintain that a POSITA would have no idea what the phrase means. *Nautilus* requires "reasonable certainty," not absolute precision. *Nautilus*, 572 U.S. at 910 (the standard "mandates clarity, while recognizing that absolute precision is unattainable"). *Nautilus* does not require the specification to explicitly label every claim step as a "stage," nor does it require identical disclosures for each step. The question is not whether every boundary question can be resolved with mathematical exactitude, but whether a POSITA would understand the claim's scope with reasonable certainty. Formal antecedent basis is not required where, as here, the claim language itself provides context and structure identifying the relevant stages.

Meta now argues that there is "nothing equivalent" in the specification for other claim steps. Crovella Reply Decl. ¶ 10. But Meta ignores the dependent claims identified in Dialect's Responsive Claim Construction Brief (Dkt. 97) ("Responsive Cl. Constr. Br.") and the support in the specification. *See* Responsive Cl. Constr. Br. at 9. Claims 6, 8–9, and 13 provide explicit intrinsic support for treating the formulation, query-processing, and presentation steps as stages at which the dynamic set is used. These dependent claims are part of the intrinsic record and carry at least as much weight as specification passages. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–15 (Fed. Cir. 2005) (en banc) (beginning by looking to "the claims themselves," including the asserted claim and other claims, before turning to the specification). They demonstrate that the processing pipeline extends beyond recognition and parsing to include formulation (claim 6), result scoring (claim 8), value evaluation (claim 9), and presentation transformations (claim 13).

The dependent claims trace the use of the dynamic set through each functional phase of the claimed method:

- **Claim 2 (Recognition):** "dynamically updating the information in the dictionary and phrase tables based on the dynamic set of prior probabilities or fuzzy possibilities." '209 Patent at 26:10–15; *see also id.* at 17:13-21 (supporting disclosure).

- **Claim 4 (Parsing/Context):** "matching the keywords contained in the recognized words and phrases to a dynamically updated set of keywords, the dynamically updated set of keywords associated with the dynamic set of prior probabilities or fuzzy possibilities." '209 Patent at 26:34–41; *see also id.* at 17:51-56 (supporting disclosure).

- **Claim 6 (Formulation):** "inferring one or more criteria and one or more parameters using the dynamic set of prior probabilities or fuzzy possibilities." '209 Patent at 26:58–27:3; *see also id.* at 18:10-31 (supporting disclosure).

- **Claims 8–9 (Query Processing):** Claim 8 recites "scoring a relevance of each of the asynchronously received results using the dynamic set of prior probabilities or fuzzy possibilities to determine one or more best responses to the at least one question." '209 Patent at 27:17–29. Claim 9 adds "evaluating the extracted values using the dynamic set of prior probabilities or fuzzy possibilities, wherein evaluating the extracted values includes resolving ambiguous, incomplete, or conflicting information." '209 Patent at 27:30–42; *see also id. at* 19:4-22, 19:46-51 (supporting disclosure).

- **Claim 13 (Presentation):** "performing variable substitutions and transformations on the best values selected for the tokens, wherein performing the variable substitutions and transformations includes using the dynamic set of prior probabilities or fuzzy possibilities to vary a terminology of the best values." '209 Patent at 28:28–41; *see also id. at* 20:57-21:21 (supporting disclosure).

These claims establish that the processing stages encompass recognition, parsing/context determination, formulation, query processing, and presentation—the functional phases of the claimed method. A POSITA reading the claims as a whole would understand that "each stage of processing the received user utterance" refers to these functional phases.

### B.    There Is No Conflict Between Dialect's Counsel and Dr. Jagadish

Meta and Dr. Crovella argue that Dialect's lawyers and Dr. Jagadish "can't even agree on claim scope" because Dr. Jagadish stated that "processing the received user utterance" refers to

what the method does "after" the utterance is received, while Dialect's brief described processing as including "capture/receipt." Reply at 3–4; Crovella Reply Decl. ¶¶ 6–8.

This argument rests on a misreading. Dr. Jagadish described the temporal sequencing of the claim steps: the utterance is first received (limitation 1[a]), and then it is processed through the subsequent steps. Declaration of Dr. H V Jagadish in Support of Dialect's Sur-Reply Claim Construction Brief ("Jagadish Reply Decl.") ¶ 9. Dialect's brief described the pipeline's flow— "from capture/receipt through recognition, parsing/context determination, agent invocation, and response." Responsive Cl. Constr. Br. at 6. The word "through" describes the direction of the flow, not that "receipt" is itself a processing stage.

Both agree on the fundamental point: the "stages of processing the received user utterance" are the steps that operate on the received utterance—recognition (1[c]), parsing (1[d]), agent selection (1[e]), formulation (1[f]), invocation (1[g]), and presentation (1[h]).

## C.    Dr. Crovella's "Past Tense" Argument Does Not Create Indefiniteness

Dr. Crovella argues that the phrase "processed request" in limitation 1[h] implies that processing of the user's utterance is already complete by that step, and that "a POSITA would have substantial doubt" whether limitation 1[h] is a stage. Crovella Reply Decl. ¶ 9. This argument fails for two reasons.

First, the claim distinguishes between "processing the received user utterance" and "processing the formulated request." The utterance is processed through recognition, parsing, and context determination. The request is formulated from that utterance (limitation 1[f]) and then processed by the domain agent (limitation 1[g]). The phrase "processed request" refers to the domain agent's execution of the formulated request—not to the completion of utterance processing. Jagadish Reply Decl. ¶ 19.

Second, even if limitation 1[h] were not a "stage of processing the received user utterance," that would not render the claim indefinite. A POSITA would still know with reasonable certainty that the stages include at least recognition, parsing, formulation, and query processing—as confirmed by the dependent claims. Any remaining question about limitation 1[h] is, at most, a scope question at the margins. Notably, dependent claim 13 recites using the dynamic set during presentation to "vary a terminology of the best values," indicating that even the final stages can involve the dynamic set. '209 Patent at 28:28–41.

### D.    Dialect's "Pipeline" Characterization Is Supported by Intrinsic Evidence

Meta argues that Dialect's description of the claimed method as a "pipeline" is "nothing but the ipse dixit of its expert" because "the specification does not even contain that term." Reply at 2. That argument misunderstands the indefiniteness inquiry. *Nautilus* does not require the specification to use a "magic word." The question is whether the intrinsic record, read as a whole, informs a POSITA of the claim scope with reasonable certainty. *Nautilus*, 572 U.S. at 910.

Here, the intrinsic record does exactly that. The specification repeatedly describes a sequential flow of operations and expressly refers to "stage[s]" of processing. Although certain embodiments describe early steps as converting the utterance into a machine-understandable form, nothing in the specification suggests that later stages—such as formulation, query processing, and presentation—cease to be part of "processing the received user utterance." To the contrary, the specification explains that "[a]t each stage of the process, probabilistic or fuzzy set decision and matching methods may be applied to deal with inconsistent, ambiguous, conflicting and incomplete information or responses." '209 Patent at 23:30–33; *see also id.* at Figure 4A. It further explains that "the fuzzy set possibilities or prior probabilities for the words in the dictionary and phrase tables may be dynamically updated to maximize the probability of correct recognition at each stage of the dialog." '209 Patent at 17:13–16. A POSITA would readily understand this

disclosure as describing a staged, sequential processing architecture—what engineers commonly refer to as a pipeline.

The dependent claims confirm this by tracing the dynamic set's use through successive functional phases of processing, including recognition (claim 2), parsing/context determination (claim 4), formulation (claim 6), query processing (claims 8–9), and presentation (claim 13). These claims are intrinsic evidence and provide concrete, claim-level confirmation that processing proceeds through identifiable stages. This is not expert ipse dixit—it is the claim language and specification operating together to provide the reasonable certainty that *Nautilus* requires.

### E.    Meta's "Comprising" Argument Conflates Definiteness with Infringement

Meta argues that the open-ended "comprising" transition creates indefiniteness because a POSITA would not know whether unrecited steps can be "stages of processing the received user utterance." Reply at 6–7, 8–9. Meta cites *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008), for the proposition that context-dependent infringement determinations signal indefiniteness. Reply at 8–9. This argument fails for three reasons.

First, open-ended claims using "comprising" are ubiquitous and are not indefinite because additional steps may be present in an accused product. *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005). Meta's theory would render every open-ended method claim indefinite.

Second, whether an accused product's unrecited operations qualify as "stages of processing the received user utterance" is an infringement question, not a definiteness question. The claim provides the baseline: the dynamic set must be usable at the recited processing stages. *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 40 (Fed. Cir. 2020) (distinguishing definiteness and infringement inquiries) ("Definiteness does not require that a potential infringer be able to determine ex ante if

a particular act infringes the claims."). Unrecited operations do not become additional "stages" unless they perform one of those identified processing functions.

Third, *Halliburton* is distinguishable. There, the term "fragile gel" was indefinite because the same composition could satisfy the claim in some drilling applications but not others—the indefiniteness was inherent in the term itself. 514 F.3d at 1254–55. Thus, "fragile gel" was "indefinite not because infringement could only be determined after use, but because infringement could not be determined at any time." *Nevro*, 955 F.3d at 40 (Fed. Cir. 2020). Here, "each stage of processing the received user utterance" has a defined meaning: the functional processing phases recited in the claim and confirmed by the dependent claims. The only potential uncertainty concerns unrecited steps in a particular accused product, which is an infringement question.

### F.    "Usable" Has an Objective Meaning in Context

Meta argues that the "crux of the indefiniteness issue" is that a POSITA would not know "how, or for what purpose" the dynamic set must be "usable." Reply at 9. Meta contends that the claim "only purports to address when the dynamic set must be 'usable'" but not "how, or for what purpose." Reply at 9–10. This argument ignores both the claim language and the dependent claims.

The claim specifies the purpose. "To begin with, the context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314. The disputed phrase is not "usable" in isolation—it is "usable at each stage of processing the received user utterance." A POSITA would understand this to mean that the dynamic set must be maintained in a form that is accessible to and can be utilized by the processing stages. In software engineering, data is "usable" when it can be accessed and interpreted by the relevant processing components; data that is discarded, inaccessible, or stored in an incompatible format is not usable. This is an objective, engineering determination. Jagadish Reply Decl. ¶¶ 27–28.

Consistent with *Phillips*' instruction that "[o]ther claims of the patent . . . can also be valuable sources of enlightenment," the dependent claims demonstrate what "usable" means. *See Phillips*, 415 F.3d at 1314. They provide examples of how the dynamic set is used at each stage:

| Stage | Claim | What "Usable" Means |
|---|---|---|
| Recognition | 2 | Usable for "dynamically updating the information in the dictionary and phrase tables . . . ." |
| Parsing/Context | 4 | Usable for "matching the keywords . . . to a dynamically updated set of keywords" |
| Formulation | 6 | Usable for "inferring one or more criteria and one or more parameters . . . ." |
| Query Processing | 8 | Usable for "scoring a relevance of each of the asynchronously received results . . . ." |
| Result Evaluation | 9 | Usable for "evaluating the extracted values . . . including resolving ambiguous, incomplete, or conflicting information" |
| Presentation | 13 | Usable for "performing variable substitutions and transformations . . . to vary a terminology of the best values" |

These dependent claims confirm what "usable" requires: the dynamic set must be maintained so it can be accessed and utilized for the specific purposes identified in these claims. A POSITA would have no difficulty determining whether an accused system maintains a dynamic set in a form that permits these uses.

Meta argues that Dialect's reliance on specification examples is "unavailing because claim scope is ordinarily not limited to the disclosed embodiments." Reply at 10 (internal citation omitted). But Dialect is not arguing that the claim is limited to the specification examples. Dialect is arguing that the dependent claims—which are claim language, not embodiment-specific disclosure—define what "usable" means. *See also* Responsive Cl. Constr. Br. at 9. Dependent claims are part of the intrinsic record and inform the scope of the independent claim. *IMRA Am., Inc. v. IPG Photonics Corp.*, No. 06-15139, 2010 WL 5420552, at *10 n.8 (E.D. Mich. Dec. 27, 2010). They provide objective boundaries without importing limitations.

### G.     Meta's Challenge to Dr. Jagadish's POSITA Definition Does Not Affect the Analysis

Meta argues that Dr. Jagadish applied a POSITA definition that was "adjudicated incorrect" in *Dialect, LLC v. Amazon.com Inc.*, and suggests he may be unqualified to offer opinions. Reply at 2 n.2.  Dr. Jagadish has clarified his POSITA definition. Jagadish Reply Decl. ¶¶ 5–6. The relevant field is speech recognition and natural language processing, not "engineering" generally. A POSITA would have a bachelor's degree in computer science, electrical engineering, computer engineering, or a related field with coursework in speech processing, natural language processing, or artificial intelligence, and at least two years of experience with speech recognition or natural language processing systems. This definition excludes civil engineers, mechanical engineers, and those without specific speech/NLP experience.

This clarification does not change the analysis. A POSITA with specific speech/NLP experience would have greater familiarity with processing pipelines and probabilistic/fuzzy methods used in speech systems, making the claim language clearer, not more uncertain. The '209 Patent describes exactly the kind of technology such a POSITA would understand: systems for processing natural language speech utterances, recognizing words, parsing utterances to determine meaning and context, and generating responses.

## III.     CONCLUSION

Meta has not carried its heavy burden to prove by clear and convincing evidence that "usable at each stage of processing the received user utterance" is indefinite. The claim language, read in light of the specification and the dependent claims, provides objective boundaries and reasonable certainty about claim scope.

Dialect respectfully requests that the Court deny Meta's indefiniteness challenge and construe the disputed phrase according to its plain and ordinary meaning.

Dated: January 29, 2026

Respectfully Submitted,

*/s/ Justin Constant*
Garland Stephens (Texas Bar No. 24053910)
garland@bluepeak.law
Richard Koehl (Texas Bar No. 24115754)
richard@bluepeak.law
Justin Constant (Texas Bar No. 24067551)
justin@bluepeak.law
Robert Magee (*pro hac vice*)
robert@bluepeak.law
Heng Gong (*pro hac vice*)
heng@bluepeak.law
Kate Falkenstien (*pro hac vice*)
kate@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd.
PMB 8160
Houston, TX 77025
Tel: (281) 972-3036

**CHERRY JOHNSON SIEGMUND JAMES, PLLC**

Mark D. Siegmund (Texas Bar No. 24117055)
msiegmund@cjsjlaw.com
Shuya "Grace" Yang (Texas Bar No. 24144144)
gyang@cjsjlaw.com
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Tel: (254) 732-2242
Fax: (866) 627-3509

William D. Ellerman (Texas Bar No. 24007151)
wellerman@cjsjlaw.com
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231
Tel: (254) 732-2242
Fax: (866) 627-3509

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

A true and correct copy of *Plaintiff Dialect LLC's Sur-Reply Claim Construction*

*Brief* was served or delivered electronically via ECF, to all counsel of record, on January 29, 2026.

/s/ *Justin Constant*
Justin Constant