**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

DIALECT, LLC

    *Plaintiff*,

v.

META PLATFORMS, INC.,

    *Defendant.*

Case No. 7:25-CV-00060-DC-DTG

**DECLARATION OF DR. H V JAGADISH IN SUPPORT OF
PLAINTIFF DIALECT, LLC'S
<u>SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>**

_____
Dr. H V Jagadish

Date: January 29, 2026

I, Dr. H V Jagadish, hereby declare and state as follows:

1. My name is Hosagrahar V. Jagadish ("Jagadish"). I have personal knowledge of the facts stated in this Declaration, and if called as a witness I could and would testify competently to them.

2. I previously submitted a declaration in support of Plaintiff Dialect, LLC's Responsive Claim Construction Brief (Dkt. 97-1). I have reviewed Defendant Meta Platforms, Inc.'s Reply Claim Construction Brief (Dkt. 98) ("Reply") and the Reply Declaration of Dr. Mark E. Crovella (Dkt. 98-1) ("Crovella Reply Decl."). I submit this sur-reply declaration to respond to arguments raised by Meta and Dr. Crovella.

3. I am being compensated for my time in this matter at my standard hourly rate of $700 per hour. My compensation does not depend on the opinions I provide or the outcome of this case.

4. The opinions expressed herein are based on my education, training, and experience and on my review of materials that I understand are relevant to the claim construction issues. These materials include, among other things: (a) the '209 Patent, including its claims and specification; (b) Meta's claim construction briefing; (c) the Crovella Declarations and referenced documents, and (d) Dialect's claim construction briefing. I reserve the right to consider and rely on additional materials as they become available.

## I. CLARIFICATION OF POSITA DEFINITION

5. Meta argues in a footnote (Reply at 2 n.2) that I applied an overly broad POSITA definition. I clarify my definition as follows:

6. The relevant technical field for the '209 Patent is speech recognition and natural language processing. A person of ordinary skill in the art ("POSITA") for the '209 Patent, as of June 2002, would have: (i) a bachelor's degree (or equivalent) in computer science, electrical

2

engineering, computer engineering, or a related field with coursework in speech processing, natural language processing, or artificial intelligence; and (ii) at least two years of experience working with speech recognition systems, natural language processing systems, or related voice interface technologies. This definition is consistent with the technology disclosed in the '209 Patent, which describes systems for processing natural language speech utterances, recognizing words and phrases, parsing utterances to determine meaning and context, and generating responses. Engineers without specific experience in speech recognition or natural language processing systems would not qualify as a POSITA for the '209 Patent.

7. This clarification does not change any of my opinions. A POSITA with specific speech/NLP experience would have greater familiarity with processing pipelines and probabilistic/fuzzy methods used in speech systems, reinforcing the understanding of the claim language I described in my prior declaration.

## II. RESPONSE TO ARGUMENTS REGARDING "EACH STAGE"

### A. Response to Alleged Conflict Between Counsel and Expert

8. Dr. Crovella argues (Crovella Reply Decl. ¶¶ 6–8) that there is an "inconsistency" between my declaration and Dialect's brief because I stated that "processing the received user utterance" refers to what the method does "after" the utterance is received, while Dialect's brief described processing as including "capture/receipt." I clarify that there is no conflict.

9. My statement described the temporal sequencing of the claim steps: the utterance is first received (limitation 1[a]), and then it is processed through the subsequent steps. Dialect's brief described the pipeline's flow—"from capture/receipt through recognition, parsing/context determination, agent invocation, and response." The word "through" describes the direction of data flow; it does not require that "receipt" itself be a processing stage.

10. Both my declaration and Dialect's brief agree on the fundamental point: the "stages of processing the received user utterance" are the claim-recited steps that operate on the received utterance as it flows through the method—recognition (1[c]), parsing/context determination (1[d]), agent selection (1[e]), formulation (1[f]), invocation (1[g]), and presentation (1[h]).

B.   **The Dependent Claims Confirm the Processing Stages**

11. The dependent claims of the '209 Patent provide concrete examples of how the dynamic set of prior probabilities or fuzzy possibilities is used at different stages of processing, confirming what a POSITA would understand "each stage" to encompass:

12. Claim 2 (Recognition Stage): Claim 2 recites "dynamically updating the information in the dictionary and phrase tables based on the dynamic set of prior probabilities or fuzzy possibilities." '209 Patent at 26:10–15. This confirms that the recognition step (limitation 1[c]) is a stage at which the dynamic set is used.

13. Claim 4 (Parsing/Context Stage): Claim 4 recites "matching the keywords contained in the recognized words and phrases to a dynamically updated set of keywords, the dynamically updated set of keywords associated with the dynamic set of prior probabilities or fuzzy possibilities." '209 Patent at 26:34–41. This confirms that the parsing/context determination step (limitation 1[d]) is a stage at which the dynamic set is used.

14. Claim 6 (Formulation Stage): Claim 6 recites "inferring one or more criteria and one or more parameters using the dynamic set of prior probabilities or fuzzy possibilities." '209 Patent at 26:58–27:3. This confirms that the formulation step (limitation 1[f]) is a stage at which the dynamic set is used.

15. Claims 8–9 (Query/Response Processing): Claim 8 recites "scoring a relevance of each of the asynchronously received results using the dynamic set of prior probabilities or fuzzy

4

possibilities to determine one or more best responses to the at least one question." '209 Patent at 27:17–29. Claim 9 adds "evaluating the extracted values using the dynamic set of prior probabilities or fuzzy possibilities, wherein evaluating the extracted values includes resolving ambiguous, incomplete, or conflicting information." '209 Patent at 27:30–42. These claims confirm that query processing and result evaluation are stages at which the dynamic set is used.

16.     Claim 13 (Presentation Stage): Claim 13 recites "performing variable substitutions and transformations on the best values selected for the tokens, wherein performing the variable substitutions and transformations includes using the dynamic set of prior probabilities or fuzzy possibilities to vary a terminology of the best values." '209 Patent at 28:28–41. This confirms that even the presentation step can involve the dynamic set.

17.     These dependent claims provide a map of the processing pipeline and identify where and how the dynamic set is used. A POSITA reading the claims as a whole would understand that "each stage of processing the received user utterance" refers to the functional processing phases recited in the claim—recognition, parsing, context determination, formulation, query processing, result evaluation, and presentation.

### C.     Response to Dr. Crovella's "Past Tense" Argument

18.     Dr. Crovella argues (Crovella Reply Decl. ¶ 9) that the phrase "processed request" in limitation 1[h] implies that processing of the user's utterance is already complete by that step, and that "a POSITA would have substantial doubt" whether limitation 1[h] is a stage. I disagree with this interpretation.

19.     The claim distinguishes between "processing the received user utterance" and "processing the formulated request." The utterance is processed through the recognition, parsing, and context-determination steps. The request is formulated from that utterance (limitation 1[f]) and then processed by the domain agent (limitation 1[g]). The phrase "processed request" in

5

limitation 1[h] refers to the fact that the domain agent has executed the formulated request—not that utterance processing is complete. A POSITA would recognize this distinction.

20. Even if limitation 1[h] were not a "stage of processing the received user utterance," that would not prevent a POSITA from understanding the phrase with reasonable certainty. A POSITA would still understand that the stages include at least recognition, parsing, context determination, agent selection, and request formulation. The dependent claims confirm this. Any remaining question about whether limitation 1[h] falls within "processing the received user utterance" is, at most, a question about claim scope at the margins. Notably, dependent claim 13 describes using the dynamic set during presentation, indicating that even the final stages can involve the dynamic set.

    **D.    Response to Argument Regarding Specification Support**

21. Dr. Crovella argues (Crovella Reply Decl. ¶ 10) that while portions of the specification "could suggest" that limitations 1[c] and 1[d] are stages of processing, "there is nothing equivalent for the other limitations of claim 1." I disagree.

22. First, the specification repeatedly describes a sequential flow of operations and expressly refers to "stages" of this process. For example, the patent states: "At each stage of the process, probabilistic or fuzzy set decision and matching methods may be applied to deal with inconsistent, ambiguous, conflicting and incomplete information or responses." '209 Patent at 23:30–33. It also states that "the fuzzy set possibilities or prior probabilities for the words in the dictionary and phrase tables may be dynamically updated to maximize the probability of correct recognition at each stage of the dialog." '209 Patent at 17:13–16.

23. Second, the dependent claims provide explicit support for treating limitations 1[f], 1[g], and 1[h] as stages at which the dynamic set is used. Claims 6, 8, 9, and 13 describe specific uses of the dynamic set at the formulation, query processing, result evaluation, and presentation

6

stages. The dependent claims are part of the intrinsic record and provide the same level of guidance as the specification passages that Dr. Crovella acknowledges could suggest that 1[c] and 1[d] are stages.

### E.     The "Pipeline" Characterization Reflects Standard Terminology

24.     Meta argues (Reply at 2) that Dialect's characterization of the claimed method as a "pipeline" rests on nothing but my opinion without support.

25.     The term "pipeline" is standard engineering terminology in speech recognition and natural language processing to describe a sequential processing flow where data moves through a series of stages. A POSITA in 2002 would recognize the claimed method as describing such a pipeline, even though the specification uses the word "stage" rather than "pipeline." The specification repeatedly describes a sequential flow of operations, including the passages cited above referring to "each stage of the process" and "each stage of the dialog." The dependent claims further confirm this structure by tracing the dynamic set's use from recognition (claim 2) through parsing (claim 4), formulation (claim 6), query processing (claims 8–9), and presentation (claim 13).

### F.     Response to "Granularity" Concerns

26.     To the extent Dr. Crovella's arguments suggest that a POSITA would not know at what level of granularity to identify each "stage," I disagree. The claim itself provides the relevant granularity: the "stages of processing the received user utterance" are the claim-recited functional processing phases (recognition, parsing, context determination, agent selection, request formulation, invocation, presentation). The dependent claims reinforce this by identifying specific uses of the dynamic set at specific functional stages, not at the level of individual code instructions or memory operations. A POSITA would not interpret "each stage" to require the dynamic set to be usable at every CPU instruction or line of code.

7

**III.      RESPONSE TO ARGUMENTS REGARDING "USABLE"**

27.     Meta argues (Reply at 9–10) that a POSITA would not know "how, or for what purpose" the dynamic set must be "usable." I disagree.

28.     In software engineering, data is "usable" when it is maintained in a form that can be accessed and utilized by the relevant processing components. Data that is inaccessible, corrupted, or stored in an incompatible format is not "usable." Whether a dynamic set of prior probabilities or fuzzy possibilities is "usable" at a given processing stage is an objective, engineering question—not a subjective judgment.

29.     The claim phrase is "usable at each stage of processing the received user utterance." The claim specifies the purpose: the dynamic set must be usable for processing the received user utterance. A POSITA would understand this to mean that the dynamic set must be maintained in a form that is accessible to and can be utilized by the processing stages—i.e., the recognition, parsing, context determination, formulation, and other steps that operate on the utterance.

30.     The dependent claims demonstrate what "usable" means at each stage. For example:

- At the recognition stage (claim 2), "usable" means the dynamic set can be used for "dynamically updating the information in the dictionary and phrase tables. . . ."

- At the parsing/context stage (claim 4), "usable" means the dynamic set can be used for "matching the keywords . . . to a dynamically updated set of keywords."

- At the formulation stage (claim 6), "usable" means the dynamic set can be used for "inferring one or more criteria and one or more parameters . . . ."

- At the query processing stage (claim 8), "usable" means the dynamic set can be used for "scoring a relevance of each of the asynchronously received results . . . ."

- At the result evaluation stage (claim 9), "usable" means the dynamic set can be used for "evaluating the extracted values . . . including resolving ambiguous, incomplete, or conflicting information."

- At the presentation stage (claim 13), "usable" means the dynamic set can be used for "performing variable substitutions and transformations . . . to vary a terminology of the best values."

31. These dependent claims confirm what "usable" requires. A POSITA would understand that the dynamic set must be maintained in a form that permits these uses.

### IV. RESPONSE TO "COMPRISING" ARGUMENT

32. Meta argues (Reply at 6–7, 8–9) that the open-ended "comprising" transition creates indefiniteness because a POSITA would not know whether unrecited steps can be "stages of processing the received user utterance." I disagree.

33. The claim provides a baseline: the dynamic set must be usable at the recited processing stages. Whether an accused product's additional, unrecited operations also qualify as "stages of processing the received user utterance" is a question to be resolved based on the facts of each case—not a problem that prevents a POSITA from understanding the claim.

34. The claim-recited steps establish the minimum scope. A POSITA can identify those steps and understand that the dynamic set must be usable at those stages. The fact that "comprising" permits additional steps does not prevent a POSITA from understanding this baseline requirement.

### V. RESERVATIONS

35. I reserve the right to supplement my opinions set forth herein depending on any information subsequently provided by Meta, including to the extent that Meta purports to rebut my opinions. In the event that I am asked or given the opportunity to provide testimony at a hearing in this matter, such as a claim construction hearing, I reserve the right to provide

additional information on my knowledge, skills, experience and other qualifications, to use visual aids.

    36.    I declare under penalty of perjury that the foregoing is true and correct.